# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JODY C.,

      *Plaintiff*,

v.

FRANK BISIGNANO, Commissioner of
Social Security

      *Defendant.*

Case No. 1:25-cv-01080-JEH-RLH

## REPORT & RECOMMENDATION

Plaintiff Jody C. ("Jody") filed this suit to challenge an administrative law judge's finding that he was not disabled under the Social Security Act and thus not eligible to receive disability benefits. This case has been referred for a report and recommendation. (*See* Text Order dated Apr. 24, 2025.) Upon review, the Court finds that the ALJ erred at step five of the sequential evaluation process. So the Court recommends that the case be remanded.

## LEGAL STANDARD

### I.     The Social Security Act

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

> **Step One.** Is the claimant currently engaged in substantial gainful activity?
>
> **Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?
>
> **Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?
>
> **RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?
>
> **Step Four.** Based on the claimant's RFC, can they perform their past work?
>
> **Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, Courts may not try the case de novo or supplant the ALJ's factual findings with their own. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). As such, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, although the ALJ's

3

decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Jody

Jody was born in 1969, (R. at 257[1]), and has received his general educational development (GED). (R. at 86–87). He is a combat veteran who has also worked at a factory machine shop, as a forklift driver, and as a cook. (R. at 88–89). Jody contends that he is unable to work primarily because of his Post Traumatic Stress Disorder, general anxiety, and back issues. (R. at 88.)

### II.    Procedural History

In July 2022, Jody applied to the Social Security Administration for disability insurance benefits and supplemental security income, alleging that he has been disabled since May 28, 2021. (R. at 15.) His application was initially denied in May 2023 and denied upon reconsideration in September. (R. at 15.) He then requested a hearing before an ALJ, (R. at 15), which took place in February 2024, (R. at 44). Present at that hearing were Jody, his attorney, and a vocational expert. (R. at 44.) Both Jody and the vocational expert testified. (R. at 44.)

After the hearing, the ALJ issued a written opinion concluding that Jody was not disabled and therefore not eligible to receive benefits. (R. at 38.) In response, Jody sought review of the ALJ's decision with the Appeals Council, but his request was denied. (R. at 1.) Jody then filed a complaint in this Court to challenge the ALJ's

---

[1] "R." refers to the Certified Administrative Record filed on May 5, 2025. (Doc. 5.) The page numbers refer to the black page numbers at the bottom right of the transcript, rather than the green page numbers generated automatically by CM/ECF at the top right of the page.

decision, (Doc. 1). Jody has filed his opening brief, (Doc. 7), and the Commissioner has responded, (Doc. 10).

## III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Jody was disabled. At step one, he determined that Jody has not engaged "in substantial gainful activity" from his alleged onset date of May 28, 2021. (R. at 17.) At step two, the ALJ found that Jody had the following severe impairments:

- emphysema/COPD;

- degenerative disc disease of the lumbar spine;

- hypertension;

- coronary artery disease with history of myocardial infarction;

- osteoarthritis of the right hand;

- PTSD;

- anxiety; and

- bipolar disorder.

(R. at 17–18.) At step three, the ALJ concluded that none of those impairments met or medically equaled any of the listed impairments. (*See* R. at 18–23.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Jody] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing of ladders, ropes, scaffolds; occasional climbing of ramps and stairs; frequent balancing, stooping, kneeling, crouching and crawling; no more than frequently reaching, pushing and pulling with the non-dominant upper extremity; no exposure to hazards such as moving mechanical machinery, unprotected heights, or open bodies of water, and no concentrated exposure to extreme heat and cold (meaning more than 90 and less than 40 F), humidity, wetness, dust, fumes, noxious odors, gasses and poor ventilation. [Jody] is limited to positions without a production pace and limited to simple and routine tasks

> and work-related decisions and no more than occasional interaction with coworkers, supervisors and the general public and can tolerate no more than occasional changes in a routine work setting. [Jody] also should be allowed use of a cane to ambulate.

(R. at 19.) At step four, the ALJ found that Jody's RFC does not allow him to perform any of his past work. (R. at 36.) Finally, at step five, the ALJ determined that—given Jody's age, education, work experience, and RFC—there exist a significant number of jobs in the national economy that Jody would be able to perform. (R. at 37.) Examples of those jobs included merchandise marker, routing clerk, and small products assembler. (R. at 37.) Based on the ALJ's conclusion at step five, he determined that Jody "has not been under a disability, as defined in the Social Security Act, from May 28, 2021, through the date of" the ALJ's decision. (R. at 38.)

## DISCUSSION

Jody makes two arguments. First, he contends that the RFC—which found that Jody needed a cane—is incompatible with the absence of limitations on Jody's ability to manipulate objects with his hands. But because Jody did not object to the vocational expert's testimony at the administrative level, this argument is waived. Second, Jody observes that agency regulations required the ALJ to treat Jody as if he was of "advanced age" (fifty-five or older), even though he was only fifty-four on the date of the ALJ's opinion. The Court agrees, and on that basis recommends remand.

## I.    Challenge 1: The ALJ's RFC Is Internally Inconsistent

In his RFC assessment, the ALJ concluded that Jody "should be allowed use of a cane" to walk. (R. at 19.) Although the ALJ identified only "infrequent" references to Jody's use of a cane in his medical records, the ALJ ultimately found that Jody

"benefits from being able to use a cane" because it "helps decrease" Jody's pain in his lower back and right leg. (R. at 36.) Jody doesn't take issue with this finding. Instead, he argues that this finding automatically required the ALJ to impose additional limitations on Jody's ability to finger, handle, and reach. (Pl. Br. 5.[2]) Although Jody's argument has some commonsense appeal, he waived it by declining to pose any questions to the vocational expert.

At the hearing, the ALJ offered a hypothetical to the vocational expert that tracked each limitation included in the ALJ's written decision. (*See* R. at 72–74.) When asked whether a hypothetical person with those limitations would be able to perform jobs in the national economy, the vocational expert answered that they would. (R. at 74.) Following this exchange, Jody's attorney was given the opportunity to ask questions of the vocational expert or to seek further clarification. (R. at 75.) He declined. (R. at 75.) By doing so, the Commissioner says, Jody has forfeited any objection to the expert's testimony. (Comm'r Br. 5.[3]) The Court agrees.

It is bedrock law that parties must "object to issues and preserve arguments" to raise them in later proceedings. *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023). And that principle applies equally to disability adjudication. *Id.* In practice (and as relevant here), it requires a claimant to "raise a timely objection to . . . a vocational expert's testimony" at the administrative level in order to preserve that objection in federal court. *Schmitz v. Colvin*, 124 F.4th 1029, 1033 (7th Cir. 2024); *see also Leisgang*, 72 F.4th at 220 ("[A] claimant may not start objecting to unquestioned

---

[2] "Pl. Br." refers to Jody's brief, filed on August 1, 2025. (Doc. 7.)
[3] "Comm'r Br." refers to the Commissioner's brief, filed on September 11, 2025. (Doc. 10.)

and uncontradicted VE testimony in federal court after the closure of the administrative record."). The one exception to this requirement is where the testimony contains "obvious flaws"—that is, where it is "facially implausible or incoherent." *Id.; see also Brace v. Saul*, 970 F.3d 818, 823 (7th Cir. 2020) (finding no waiver where the testimony was "entirely unilluminating" and could not "possibly satisfy the substantial-evidence standard"). Put simply, in order to object to the vocational expert's testimony, a claimant must challenge it at the hearing.

But is Jody challenging the testimony? At first blush, Jody's brief suggests that his objection is not to the expert's testimony, but instead to the ALJ's RFC assessment. Indeed, Jody asserts that his "RFC for a reduced range of light exertional work . . . is internally inconsistent with the lack of handling or fingering limitations in the RFC." (Pl. Br. 5.) And a claimant "cannot waive" an objection that the ALJ's decision was not supported by substantial evidence. *Leisgang v. Kijakazi*, 72 F.4th 216, 220 (7th Cir. 2023).

A closer look, however, reveals that Jody is in fact challenging the testimony. Although Jody's argument is couched in terms of the "inherent incompatibility" of the ALJ's RFC assessment, he does not contend that the limitations the ALJ found were not supported by the record. Instead, Jody appeals to common sense: light work would require him to stand for between six and eight hours, *see* 20 C.F.R. § 404.1567(b) (defining "light work"); during that time, Jody would be using a cane; therefore, Jody would lose the ability to manipulate objects with whichever hand is leaning on the cane. Put differently, Jody's use of a cane precludes him from performing any jobs

that would require him to stand and manipulate objects for the better part of an eight hour workday.

At its core, this argument is an assault on the vocational expert's testimony. The ALJ asked the expert whether a person who needed to use a cane (and who also had other limitations) would be able to perform light work, (R. at 74), to which the expert responded, "Yes." (R. at 74.) Jody's argument thus amounts to a disagreement with that testimony: Jody is not convinced that a person who uses a cane can perform light work. But Jody was required to voice his objection to that apparent inconsistency at the hearing. By failing to do so, the argument is waived.

This conclusion is reinforced by Jody's own brief. In it, he observes that "the VE never testified that the light exertional jobs she provided at Step Five . . . can be performed with minimal walking." (Pl. Br. 6.) In other words, the vocational expert did not explicitly describe how much walking is typically required to perform the jobs that the expert offered as examples—merchandise marker, routing clerk, and small products assembler. (R. at 75.) That is true so far as it goes. But the expert *did* say that a person who uses a cane to walk is capable of performing those jobs. (R. at 74.) Implicit in that conclusion is that none of those jobs frequently require the employee to manipulate objects with both hands while standing or walking. Otherwise, as Jody notes, a person who uses a cane would not be able to perform them.

This is why *Klemp v. Kijakazi*—a case on which Jody relies by attempting to distinguish it—cuts against his argument. No. 21-cv-342, 2022 WL 4129360 (W.D. Wis. Sept. 8, 2022). There, as here, the ALJ found that the claimant was required to

10

use a cane to walk. *Id.* at *2. And the claimant in that case, like Jody, argued that "light work" is "internally inconsistent" with the use of a cane because "a person using a cane loses the use of one hand and arm." *Id.* Although the court characterized the argument as a "fair point," it concluded that any error was "harmless because the ALJ relied on the vocational expert's testimony to find" that the claimant "could perform jobs that required minimal walking." *Id.* The only difference between that case and this one is that the vocational expert in *Klemp* made explicit what the vocational expert here only implied. That is, the vocational expert in that case stated that the jobs offered as examples were "basically seated" positions and therefore commensurate with the use of a cane. *Id.* at *1. Here, however, the ALJ asked whether a person with Jody's limitations—who "is also required to use a cane to ambulate"—can perform other work. (R. at 74.) The expert clarified that the Dictionary of Occupational Titles "does not specifically address" the use of "assistive devices," and that she was instead relying on her "education, training, and experience as a vocational counselor." (R. at 74–75.) After giving that proviso, the expert testified that a person with Jody's limitations would be able to work as a merchandise marker, a routing clerk, and a small products assembler. (R. at 75.) As in *Klemp*, the ALJ here "relied on the vocational expert's testimony" to conclude that a person with Jody's limitations could perform those light jobs. *Klemp*, 2022 WL 4129360, at *2.

Jody's attempt to distinguish *Klemp* underscores the importance of objecting to the vocational expert's testimony at the hearing. As the Seventh Circuit has put it, "the ALJ is better suited than [courts] to unpack and untangle objections" to the

11

vocational expert's testimony "in the first instance." *Leisgang v. Kijakazi*, 72 F.4th at

220. "And the ALJ is best positioned to do so when the claimant identifies those

objections and concerns expressly, allowing the proper development of the evidentiary

record in real time." *Id.* Perhaps if Jody had asked the vocational expert to further

explain her testimony, she would have explained *why* Jody could perform the jobs she

offered—i.e., because they don't require people to simultaneously stand and

manipulate objects with both hands. But Jody never prompted her to do so.

Accordingly, the ALJ was entitled to credit the vocational expert's testimony that a

person with a cane could perform the jobs offered as examples.

The final question is whether Jody's failure to object at the hearing is

excusable. To find that it was, the Court would have to conclude that the vocational

expert's testimony was "facially implausible or incoherent." *Leisgang*, 72 F.4th at 220.

It was not. As the Commissioner observes, the regulations categorize work by

reference to the *maximum* amount of physical exertion that the jobs in that category

require. (Comm'r Br. 7.) For example, the regulations indicate that "[l]ight work

involves lifting *no more* than 20 pounds at a time." 20 C.F.R. § 404.1567(b) (emphasis

added). The regulations clarify that some light work requires only minimal amounts

of lifting, walking, or standing: "Even though the weight lifted may be very little, a

job is in this category when it requires a good deal of walking or standing, or when it

involves sitting most of the time with some pushing and pulling of arm or leg

controls." *Id.* So the category "light work" sets a ceiling—not a floor—on the physical

exertion required to perform jobs in the category. It is therefore plausible that a

person using a cane could perform light work because they would be "sitting most of the time." *Id.* Accordingly, the vocational expert's testimony that Jody could perform light work is not "facially implausible or incoherent." *Leisgang*, 72 F.4th at 220.[4]

## II.   Challenge 2: The ALJ Should Have Applied the Regulations Applicable to Claimants Fifty-Five Years of Age and Older

Jody's second argument is that the ALJ should have treated Jody as if he was fifty-five years old, rather than fifty-four. To parse this argument, it is necessary to understand two things: the first is how the Social Security Administration treats age; the second is how a claimant's age is relevant to an ALJ's application of the medical-vocational guidelines at step five of the evaluation process.

Start with age classification. The administration groups ages into three broad categories: younger person (under 50); a person closely approaching advanced age (ages 50–54); and a person of advanced age (ages 55 and older). 20 C.F.R. § 404.1563(c)–(e). But those categories are not applied rigidly—that is, they are not always a straightforward calculation of the difference between the date of the ALJ's decision and the claimant's date of birth. So, when a claimant is "within a few days to a few months of reaching an older age category," and applying the category would "result in a determination that" the claimant is disabled, the administration will "consider whether to use the older age category after evaluating the overall impact of all the factors" of the claimant's case. *Id.* § 404.1563(b).

---

[4] For the same reasons, the Court finds that Jody waived his second challenge—i.e., that the "VE's testimony was premised on a faulty RFC determination, since it was illogical to determine that" Jody "could carry twenty pounds." (Pl. Br. 7.) Unlike his first argument, this challenge is couched in terms that call into question the vocational expert's testimony. Because he did not challenge that testimony at the hearing, the argument is also waived.

A claimant's age is particularly important when applying the medical-vocational guidelines. Those guidelines, sometimes called "grids," are "a matrix of the four factors identified by Congress—physical ability, age, education, and work experience." *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). They "set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* at 461–62. When a claimant's RFC, age, education, and work experience "coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. § 404, Subpt. P, App. 2.

The "borderline age" exception animates Jody's second challenge. He argues that, because Jody was born on December 12, 1969, he was approximately fifty-four years and three months old when the ALJ issued his decision in March 2024—put differently, he was eight months and thirteen days shy of his fifty-fifth birthday. (R. at 125.) Yet the ALJ's decision clearly placed Jody in the "approaching advanced age" category (50–54), as the ALJ applied the grid applicable to individuals of that age.[5] (R. at 37.) Jody argues that he was "within a few days to a few months of reaching" the advanced age category, which applies to claimants who are fifty-five years of age and older. 20 C.F.R. § 404.1563(b).

---

[5] To put a finer point on it, both parties recognize that the ALJ invoked Medical-Vocational rule 202.14. That "grid" applies to those who (1) are limited to light work, (2) are "*closely approaching advanced age*"; (3) have a high school degree or its equivalent; and (4) have no transferrable skills. 20 C.F.R. § 404, Subpt. P, App. 2 (emphasis added). The grid directs ALJs to find a claimant in that category *not* disabled, but only if their RFC allows them to perform "the full range of light work." *Id.* If their RFC includes additional limitations—as Jody's does—then the ALJ is not required to find the claimant not disabled. Instead, the ALJ must determine whether the claimant can perform other jobs that exist in significant numbers in the national economy. This is where ALJs rely on the testimony of vocational experts.

14

But is eight and a half months "within a few months"? To start, the word "few" is not exactly reducible to mathematical precision. And although courts differ on the question, most hold that "a few days to a few months' generally means a period not to exceed six months." *James v. Kijakazi*, No. 20-cv-1372, 2022 WL 504078, at *2 (E.D. Wis. Feb. 18, 2022); *see also, e.g.*, *Young v. Barnhart*, 287 F. Supp. 3d 905, 913 (N.D. Ill. 2003) (applying the higher age category when the claimant was five months from the next category); *Graham v. Massanari*, No. 00-cv-4669, 2001 WL 527326, at *3 (N.D. Ill. May 9, 2001) (four and a half months); *Sopko v. Colvin*, No. 12-cv-6240, 2013 WL 5497276, at *11 (N.D. Ill. Oct. 3, 2013) (six months and eight days).

This interpretation is reinforced by the Social Security Administration's Hearings, Appeals, and Litigation Manual, or "HALLEX," which is an internal manual used by the Administration's hearings and appeals staff. The HALLEX also limits "within a few months" to six months or less. *Id.* at *3 (quoting *Cromer v. Apfel*, 234 F.3d 1272, 2000 WL 1544778, at *2 (7th Cir. 2000)).[6] Accordingly, six months is as far as courts are willing to stretch the "within a few months" language. Because Jody was eight months shy of turning fifty-five at the date of the ALJ's decision, the Commissioner argues, Jody was not entitled to have his claim analyzed under the "advanced age category."

---

[6] The HALLEX also explains that ALJs "need not explain his or her use of the claimant's chronological age." *Figueroa v. Astrue*, 848 F. Supp. 2d 894, 901–02 (N.D. Ill. 2012) (emphasis omitted). But there is a considerable split among the circuits about whether and to what extent the ALJ must justify the application of one age category over another. For a detailed analysis of that split, see *Anderson v. Astrue*, No. 09-cv-2399, 2011 WL 2416265, at *11–14 (N.D. Ill. June 13, 2011).

All of this assumes, however, that the claimant's proximity to the next age bracket should be considered as of the date of the ALJ's decision. That assumption is incomplete. Indeed, courts have recognized that the HALLEX instructs ALJs to "[c]onsider applying" the borderline-age exception "whenever the age category changes within a few months after [1] the alleged onset date, [2] the date last insured . . . , or [3] the date of the ALJ's decision." *Figueroa v. Astrue*, 848 F. Supp. 2d 894, 901–02 (N.D. Ill. 2012) (quoting Hallex 11–5–3–2 (Nov. 2, 1993), http://www.socialsecurity.gov/OP_ Home/hallex/II–05/II–5–3.html.). Jody's alleged onset date was June 3, 2021—almost three years before the ALJ's decision.[7] On that date, Jody was fifty-one and a half years old, so using Jody's alleged onset date would only move the needle backwards. But his "date last insured" was June 30, 2024—five months and twelve days before his fifty-fifth birthday. (R. at 254.) That would bring Jody within the outer limit of the six-month period discussed above and would therefore warrant application of next age category.[8]

Since the ALJ erred by not discussing whether Jody's case would warrant application of the borderline-age exception, the question is whether the error was harmless. As the regulations explain, ALJs should apply the borderline-age exception

---

[7] Originally, Jody's alleged onset date was May 28, 2021, (R. at 276), but it was later amended at the hearing to June 3, 2021, (R. at 15.)

[8] The Commissioner argues that the ALJ "could not have found" Jody disabled "as of June 30, 2024," because "the period before the ALJ ended on March 29, 2024, the date of his decision." (Comm'r Br. 9.) The Court takes this to mean that the *only* relevant date for determining whether to apply another age category is the date of the ALJ's decision. But that argument is squarely foreclosed by the regulations, which specify that the date last insured and the alleged onset date should also be considered. Because Jody was to turn fifty-five within six months of the final date on which he was eligible to receive disability benefits (i.e., his date last insured), the ALJ was required to consider applying the borderline-age rule to his case.

only if "using the next higher age category" would "result[] in a 'disabled' determination."[9] So the failure to treat Jody as if he was fifty-five or older at the time of the ALJ's decision is not grounds for reversal unless that age category would have changed the outcome—i.e., would have led the ALJ to conclude that Jody was disabled. For that reason, courts reverse an ALJ for applying the wrong age only where the claimant's "age categorization is significant." *Anderson*, 2011 WL 2416265, at *9 (remanding where the medical-vocational guidelines "would have dictated a finding that" the claimant "was disabled" if placed in a different age category).

The ALJ's error here warrants remand for three reasons. First, the ALJ did not discuss Jody's age at all. Although he identified the medical-vocational guidelines as relevant to step-five of the evaluation process, he never mentioned—let alone discussed—whether he was required to analyze Jody's case under the borderline-age rule. Courts have remanded for this reason alone. *See Reginald B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-1369, 2023 WL 6276039, at *6 (S.D. Ill. Sept. 26, 2023) (explaining that "remand is required if the ALJ fails to make a statement indicating it considered the proper age category for the claimant or explain its decision") (collecting cases).

Second, it is unclear whether the medical-vocational guidelines would direct a finding of "disabled" in Jody's case if his vocational profile were analyzed under the "advanced age" category. The two potentially relevant "grids" here appear to be 202.06 and 202.08. Guideline 202.06 directs a finding of "disabled," while 202.08 directs a finding of "not disabled." 20 C.F.R. § 404, Subpt. P, App. 2. The outcome

---

[9]  *Programs Operations Manual System (POMS) DI 25015.006*, Soc. Sec., https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last updated Aug. 5, 2024).

turns entirely on whether the claimant's high-school education "provides for direct entry into skilled work," *id.* as illustrated by the following chart:

| Rule | Age | Education | Work Experience | Decision |
|------|-----|-----------|-----------------|----------|
| **202.06** | Advanced Age | High school graduate or more—*does not* provide for entry into skilled work | Skilled or semiskilled—skills not transferrable | Disabled |
| **202.08** | Advanced Age | High school graduate or more—*provides* for entry into skilled work | Skilled or semiskilled—skills not transferrable | Not disabled |
| **202.14** | Closely approaching advanced age (51–54) | High school graduate or more | Skilled or semiskilled—skills not transferrable | Not disabled |

*Id.* (emphasis added). The final row of the chart—202.14—is the guideline that the ALJ applied in step five of his decision. (R. at 37.) The other rows—202.06 and 202.08—are relevant because they are the most analogous to 202.14. The only differences are that Rules 202.06 and 202.08 (1) apply claimants of advanced age; and (2) further subdivide the claimants' education into whether it provides for direct entry into skilled work. Put simply, *had* the ALJ applied the borderline-age exception to Jody's case (i.e., treated Jody as if he was fifty-five), the question whether Jody is disabled turns exclusively on whether his education "provides for direct entry into skilled work." But this Court cannot make that determination in the first instance. The only evidence that the Court has to draw on is the fact that Jody obtained his high school equivalency. And it is not the province of this Court to analyze the facts

of Jody's case under the medical-vocational guidelines in the first instance—that is the ALJ's responsibility, and it was abdicated here.[10] *See Haynes v. Barnhart*, 416 F.3d 621, 628 (7th Cir. 2005) ("[T]he ALJ must give consideration to the grids or use them as a framework . . . .").

The third and final reason that remand is appropriate is because the ALJ's error occurred at step five. Unlike steps one through four, the burden at step five shifts to the Commissioner. *Weatherbee*, 649 F.3d at 569. Accordingly, it was incumbent upon the ALJ to explain why the borderline-age rule should or should not apply to Jody's case. And if he found that the rule *does* apply, the ALJ must articulate whether Jody is considered disabled under the relevant medical-vocational guideline.

## CONCLUSION

IT IS THEREFORE RECOMMENDED that the ALJ's decision be remanded in light of this Report and Recommendation. The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen days after service of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of

---

[10] To avoid confusion, the Court makes the following point: As the ALJ recognized, the grids direct a finding of disabled or not disabled when the claimant can "perform all or substantially all of the requirements" of the level of work to which the grid applies (light, sedentary, etc.). When a claimant *cannot* perform the entire range of work in a particular category, the ALJs rely on vocational experts to "determine the extent to which" a claimant's additional limitations "erode the unskilled light occupational job base." (R. at 37.) So, for example, a claimant who can perform light work with additional restrictions cannot avail themselves of the grids that apply to a less physically demanding category, like sedentary work. And the Seventh Circuit has so held. *See Haynes*, 416 F.3d at 627–28. But if a claimant *does* satisfy the criteria of a grid, and if that grid would direct a finding of disabled, it defies reason to suggest that they could be found not disabled merely because they possess additional limitations. In other words, if a claimant who can perform the full range of light work is considered disabled because they satisfy a grid's criteria, it would be absurd to suggest that another claimant— who is identical in all respects except they have more limitations—may be considered "not disabled."

objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*So recommended.*

Entered this 14th day of January 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge
